JOURNAL ENTRY AND OPINION
{¶ 1} Shanica Norman, defendant-appellant, appeals her assault conviction. For the reasons that follow, we affirm.
 {¶ 2} Shanica, and her sister, co-defendant Antoinette Norman, were indicted by the Cuyahoga Grand Jury on two counts of felonious assault.[1] Count one alleged that Shanica and Antoinette knowingly caused serious physical harm to the victim, Angelique Tunstull. Count two alleged that Shanica and Antoinette knowingly caused or attempted to cause physical harm to Tunstull by means of a deadly weapon or dangerous ordnance, to-wit: a pocket knife.
 {¶ 3} Shanica and Antoinette waived their right to a jury and the case proceeded to a bench trial. At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal. The court granted the motion as to count two of the indictment, and denied the motion as to count one. Antoinette testified on her own behalf. JoAnn Norman, Shanica and Antoinette's mother, also testified on behalf of the defense.
 {¶ 4} The court found Shanica guilty of a lesser included offense of count one, assault, and found Antoinette guilty of a lesser included offense of count one, aggravated assault. Shanica now appeals, claiming that the conviction was against the manifest weight of the evidence. In particular, it is Shanica's contention that inconsistencies in Tunstull's testimony, as well as her and the eyewitness' lack of credibility, render her conviction against the manifest weight of the evidence. We disagree.
 {¶ 5} A challenge to the manifest weight of the evidence attacks the verdict in light of the State's burden of proof beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 386-87,678 N.E.2d 541. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S. Ct. 2211. In taking on this role, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new proceeding ordered. State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Where a judgment is supported by competent, credible evidence going to all essential elements to be proven, the judgment will not be reversed as being against the manifest weight of the evidence. State v. Mattison (1985),23 Ohio App.3d 10, 14, 490 N.E.2d 926.
 {¶ 6} At trial, Tunstull testified that as she was opening her car door to let her daughter out for school, Shanica and Antoinette jumped into the car and hit her. Tunstull testified that Shanica and Antoinette cut her on the face with a small pocket knife that had a blade resembling a nail file. According to Tunstull's trial testimony, Shanica had the knife first. In her statement to the police, however, Tunstull stated that Antoinette had the knife first.
 {¶ 7} Tunstull further testified that a third unidentified woman hit her with an umbrella. During her testimony, Tunstull stated that an observer who was sitting in the courtroom during the trial resembled the third unidentified woman who hit her with an umbrella.
 {¶ 8} Tunstull further stated during her testimony that the three women were about to pull her from her car when a witness, Michael Bearden, identified himself as a police officer and yelled for them to stop. Tunstull testified that Shanica and Antoinette stopped and the unidentified third woman ran away. In her statement to the police, Tunstull indicated that the women had pulled her out of her car.
 {¶ 9} Bearden testified that he observed what he described as an "un-normal" situation with a couple of women kicking and stomping with "violent movement." Although not a commissioned police officer, Bearden identified himself as such because he was "highly concerned" about the situation. According to Bearden, the altercation took place outside the car, and there was no third woman.
 {¶ 10} Antoinette testified that she had been having problems with Tunstull threatening her and her children, whose father was Tunstull's boyfriend at the time. As such, when Antoinette saw Tunstull at the school, she approached her to ask her if she would stop her threats, and Shanica, who was with her, went as well. Words were exchanged and fighting began, although Antoinette could not recall who started the fight. Antoinette denied having any object with which she cut Tunstull and testified that the altercation occurred outside the car.
 {¶ 11} JoAnn Norman, Shanica and Antoinette's mother, testified that, shortly after the altercation, she observed Tunstull in her car outside Shanica's house.
 {¶ 12} After going to the police station to have her injuries photographed, Tunstull went to the hospital for treatment. The hospital records indicate that Tunstull said she was assaulted with a nail file. Tunstull was released that same day, with instructions to apply Dermabond cream to the cuts on her face and take Motrin for pain relief.
 {¶ 13} Shanica and Antoinette were arrested and searched at the scene. No weapons were found on their persons or at the scene.
 {¶ 14} Upon review, we cannot find that the factfinder "clearly lost its way and created such a manifest miscarriage of justice that [her] conviction must be reversed and a new trial ordered." Martin, supra, at 175. The alleged inconsistencies were brought out during the trial, and the trier of fact had the opportunity to assess Tunstull and Bearden's credibility. Since the weight to be given the evidence and the credibility of witnesses are primarily issues for the trier of fact,State v. DeHass (1996), 10 Ohio St.2d 230, 227 N.E.2d 212, and since this court cannot say the trier "lost his way," the judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Rocco, J., concur.
[1] For purposes of clarity, since the co-defendants bear the same last name, we will refer to them by their first names only.